22-6349 with Mr. Palacios. And Mr. Palacios, you have also reserved three minutes for rebuttal, and whenever you're ready, you may begin. Good morning, Your Honors, and may it please the Court, my name is Mr. Xavier Palacios. I represent Serrato-Barahona. Mr. Serrato-Barahona, as a petitioner, is asking for one thing, the opportunity to have his protection claim considered under the standards the regulation actually required. Mr. Barahona is a national of Honduras. He arrived to the United States and was issued an order of removal back in 2010. Shortly thereafter, he was removed. We're not contesting that order. He lives in Honduras for about five years. In 2016, he starts to be persecuted. He flees Honduras. He flees Honduras because he had been beaten twice, suffered a knife wound that required stitches. He'd been threatened repeatedly, and in April of 2022, years after having fled Honduras and weeks before his reasonable fear interview, his brother was killed. His 17-year-old brother was murdered. The asylum officer found that he was credible, and the IJ did not disturb that credibility finding. There was a reinstatement order issued. We're not contesting that reinstatement order. The IJ nonetheless concluded there was no reasonable possibility of persecution or torture. We submitted a brief. We submitted evidence, and most importantly, we submitted a very key piece of evidence. Even though this was only a review stage, we understood that the standards and the stakes were high here. We submitted a letter from a mayor of Honduras. That letter specifically said to the family, leave. We cannot protect you. If that's not acquiescence, what more can we have? The government, if we were to adopt the government's position here, it feels kind of like it would be a one-shot deal for any petitioner, right? So your client came in and was removed. And once that happens, no matter what happens to the non-citizen when they're back in their home country, no matter what the level of torture or persecution, if they attempt to return to this country, the adjudication of those questions is unreviewable full stop because of the prior removal. So effectively, no matter what happens, is that the government's position from your perspective? No matter what happens after the initial removal, it's unreviewable. As I understand it, they would want us to contest either the first removal order or the reinstatement order. And if we don't, then yes, it's not reviewable. And if, as you say, the first removal order was perfectly legitimate at the time, then what is there to contest there? And that is exactly our case. There was nothing to contest either in the first order. He left. He lived in his country for five years. The persecution started. So those changes in circumstances are not addressed in the approach that the government would want us to have. You do have changes. There may be plenty of cases, in fact, there are plenty of cases where removability is not a substantial issue. A person has overstayed their visa, they're plainly removable from this country, they have no other ties that would cause for the withholding of removal. But the only issue is them being sent to a country where they would face torture. It happens all the time, right, that people just challenge the CAD orders without challenging the underlying order for removal. That's right, Your Honor. And I think that in this particular case, the IJ was tasked to do one thing, to review the reasonable fear adjudication. But on the merits, didn't the IJ conclude that while your client, well first of all with respect to acquiescence, does a government's inability to control gang violence in and of itself mean that the government is acquiescing in that violence? I believe that this Court has found that if just one government official is aware of the violence, is aware of the torture, the persecution, and does nothing about it, that is enough. But if they're not able to do anything about it, that was my question. Well, I believe that in our argument, had we made it to the withholding only proceedings, the full proceedings, we would have been able to show that it wasn't just acquiescence, but it was complicity. The widespread gang violence, the ability for them to do what they were doing was only, they were only able to do it because the government acquiesced and participated. I have a little puzzle. Why couldn't you have made all the showings that you say you could make in the proceedings which were given you? Your Honor, that's where we would have liked to have ended. This matter did not make it there. We were shut out at the review process. A review process under 1208.31 should only be a de novo review of the negative reasonable fear determination by the asylum officer, and the asylum officer and the immigration judge both found that he was credible, just didn't allow us to go to the full withholding only hearing. And that is all that our client is seeking here today, and has always been seeking since he had filed for the interview. All right. Thank you, Mr. Palacios, you deserve some time for rebuttal. Ms. Robinson, we'll hear from you again, and I guess I'll start with the question I asked Mr. Palacios, which is that this sort of feels like no matter what happens to a petitioner like Mr. Serrato, after the initial removal, there's just nothing to be done for them, no matter how strong their evidence. And if they're denied at the first levels, they just have no avenue for review. Is that right? So, Your Honor, I would just point out that the Supreme Court in Riley was aware of some of these practical and of the hardship arguments, but noted that the statute controls. And the same was true in Nasrallah. The Supreme Court acknowledged these types of concerns, but said jurisdiction controls, and that's true here as well. I would also just- So isn't your argument the amount to saying that the executive is vested with the unfettered discretion to honor or disregard the convention of torture at his or her will, without there being any opportunity for anybody to challenge it? That's in essence what you're saying, right? So, Your Honor, yes, because I would say Congress has limited jurisdiction to cases where the alien challenged a final removal order in 1252. So if the reasonable fear officer or the IJ or somebody along the way says, I'm not going to grant this, even though all of the evidence is here, because I think the CAT, the Convention Against Torture, is crazy and we never should have signed it. So in spite of the fact that the evidence is overwhelming, that this person is being tortured by or with the acquiescence of the government, I'm going to deny relief. We have no ability to review that. Not in the circuit court, Your Honor. I would say that the Department of Homeland Security always has discretion to NTA someone and does in some cases where the person has re-entered it legally. That becomes entirely discretionary, and I'm just wondering whether we should read the statutes, like 1252A4, the Supreme Court's decision in Riley, as you would have us read it, rather than saying that we do have jurisdiction and then look to the merits of whether there is anything there. And I hope you will address the merits, because in this case, I have more problems with that. Yes, Your Honor, so I would say, you know, jurisdiction is first. And so we don't need to get there, but I would say I also share some issues with the merits, which we laid out in our answering brief. And so I'll just note here that much of the evidence... He says that he didn't get a chance to present evidence of torture, danger, and acquiescence. Is that in fact the case? No, Your Honor. He had the chance, and the record contains evidence that there is gang-related crime and extortion, which was the primary issue that he was having in Honduras. But that doesn't compel the conclusion that the Honduran authorities would consent or acquiesce to that activity generally or in Petitioner's case. And he said, pages 130 through 33, that he didn't report the gang's threats and extortion to the authorities. And it's not clear, so he referenced the letter from the town mayor. It's not clear from the record whether he sought assistance prior to his departure, even with that letter. So the letter itself doesn't show that anyone was consenting or acquiescing. Thank you. Let me ask you a general question, Ms. Robinson. You may have a perspective on this that I don't, and I'll ask Mr. Palacios as well. But is this question percolating in other circuits? I think the Third and the Ninth have weighed in. Where else is it brewing? Yes, Your Honor. So I submitted, and I do apologize for the lateness of the 28-J letters. I was out rather unexpectedly. In the 11th Circuit, United States v. Hales, that was submitted, and I can get that for the Court. That's okay. If it's in the 28-J, we've got the details. Yes, Your Honor. So the 11th? Right. That was the 11th, and that Court, that was on June 22nd, 2026, so the 28-J is from that day, and the Court agreed with the Ninth Circuit in Navarrete v. Bondi, which was the Ninth Circuit decision, 170F4, it's 1214, in 2026. And then in the Third Circuit, there was a decision that was adverse. It was a divided panel. I believe the 11th Circuit was as well, and Laureano, and that was May 29th, 2026. Counsel? Yes, I'm sorry. We've been told that the Ninth Circuit has voted to go in bed. Is that correct? No, Your Honor. So the Ninth Circuit requested briefing on whether the Ninth Circuit should go on bed. The government's position on that is due, I believe, it's today, Wednesday, it's due on Thursday. Oh, I see. So the decision of whether the Ninth Circuit will go in bed is yet open. Yes, Your Honor. I'm sorry, Your Honor. Go ahead. I was going to say, the Fourth Circuit, Riley, was a remand, and Justice Thomas' concurrence asked the Fourth Circuit to look at this issue or raise this issue on remand. The Fourth Circuit held argument, I believe, in June. No, it would have been November. It was before I filed the supplemental brief, but a decision is still pending. So this issue is percolating. Thank you. Okay. So that we have a definite circuit split, in any event, between the Third and the others. We don't know what the Fourth is going to do. And the Ninth has gone one way, but we know that the Ninth often goes in bed. And then what happens in the Ninth Circuit in bed is anybody's guess, because who knows who the panel will be in bed. Yes. And I'll note that I believe that we are still within the timeframe that the government could seek en banc review in the Third. And my understanding is that the government is strongly considering that.  Okay. So it's percolating. Yeah, although I wonder about that. If this is this kind of issue, isn't it something that is really best settled by the Supreme Court in any event? All right. I'm sorry, Your Honor. I know you want to win, but sometimes a circuit split has a certain effect of getting us to learn from the Supremes what the law is. Well, and I can hardly counter that, Your Honor, given that that is what happened in Serrato on the timeliness issue. It was held after oral argument. I would say at that point, I believe that Riley was already going up to the Supreme Court. So if the court once again held these decisions, it would be somewhat indefinite. Sure. Good. Thank you. All right. Thank you, Counsel. We'll hear again from Mr. Palacios. And I'll ask you if you're aware of any other circuits. It feels like we would normally hear from the Fifth on something like this and maybe the First. But if you're aware of any other circuits where this issue is percolating, besides the Third, Fourth, Ninth, and Eleventh. Other than those that have already been mentioned, I do not know of any others, Your Honor. Thank you. If we adopt the approach that the government would want us to adopt today, the unchecked power of the IJ, we just never have a review of it. The DHS has, or the government has indicated that the DHS has the power to issue an NTA. We would like that to happen, because if you issue the NTA, then maybe we're eligible for asylum as well. The truth is that that's not going to happen. They're not going to issue an NTA after they already have an order and a reinstatement order. We never received, we never had the opportunity to visit the case on its merits. It's only because we presented an exorbitant amount of evidence that the judge was able to make a determination as if it were a merits hearing, but it wasn't a merits hearing. It was only a review, and the statute specifically says that the judge has a very limited power to look at that and should not consider it or treat it as a full hearing. Counsel addressed Rodriguez. Rodriguez addressed the meaning of a removal order under the criminal reentry statute, not the 1252A1 definition. Well, and Rodriguez was all about the fact that if the original order is defective, then no matter how many times you reinstate it, it doesn't cure anything. Right. That's what Rodriguez is about. Right. So the reinstatement order, in our view here, is a final order, and the jurisdiction attaches through 1252A1 and through B9, the zipper clause, which allows you to visit anything that arises from the reinstatement order, which is the final order. Our contention is that you do have jurisdiction to see this case because of that, and I don't think that goes in contradiction of any prior decisions from the Supreme Court. I think that both what the Second Circuit has already decided, as well as — But wasn't the decision of the IJ and the BIA on its face a decision of the merits that you did not have a claim? We never made it to the BIA, but the IJ does indicate that we didn't have a claim. But I think that was premature. All the IJ had to do at that juncture was to review the notes or our submissions at the point that the credible fear interview had occurred, and it's a very low standard. It's not the standard equal to that of a full withholding-only hearing. We would have liked to make it there to really present the full scope of our claim. So if a reasonable fact finder could have found from the evidence that you presented that the government did not acquiesce in the violence and the threats that your client will face if returned to country, if that determination was supported by substantial evidence and the IJ could reach that conclusion, doesn't that end your merits argument? I don't think so. I think that would be premature for the IJ to make that determination unless they're putting on a full-blown hearing. We don't normally go there prepared to put on the full case. We go there for a de novo review of the reasonable fear of persecution, whether there is a reasonable fear of persecution at the lower standard of reasonable possibility, not at the higher standard once you make it to the withholding-only claim. Thank you very much, Mr. Palacios.  And thank you, Ms. Robinson. We will take these matters under advisement.